2012 Ark. App. 415

**Aaron STOLIKER, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Children, Appellees.**

**No. CA 12–155.**

Court of Appeals of Arkansas.

June 27, 2012.

Lisa Jones Ables, Little Rock, for Appellant.

Tabitha B. McNulty, Office of Chief Counsel, Little Rock, Keith L. Chrestman, Chrestman Group, PLLC, Jonesboro, for Appellees.

JOHN B. ROBBINS, Judge.

This is a dependency-neglect case involving a five-year-old boy named I.S. The child's parents are appellant Aaron Stoliker and Kyra Stoliker, who is not a party to this appeal. Also involved in this case are the paternal grandfather, David, and the maternal stepgrandfather, Ken, with whom I.S. has had considerable contact. Aaron is appealing from an adjudication and disposition order entered on December 8, 2011, wherein I.S. was adjudicated dependent-neglected. Aaron's primary argument is that the trial court erred in removing the child from his home based on its finding of dependency-neglect. We affirm.

The background facts of this case are as follows. I.S. was born on November 24, 2006, and Aaron and Kyra married about a month later. Aaron and Kyra subsequently divorced in December 2009. Aaron was awarded custody of I.S., and Kyra was given standard visitation. Neither Aaron nor Kyra has remarried.

This case was initiated on October 3, 2011, when appellee Arkansas Department

of Human Services (DHS) filed a petition for emergency custody and dependency-neglect. Attached to the petition was an affidavit by DHS caseworker Tiffany Harper. The affidavit disclosed that Aaron had recently called the hotline and reported that I.S. had been abused by his mother and maternal stepgrandfather during one of his visits. Specifically, it was reported that Kyra and Ken had hit and poked I.S. in the head, and that Ken had sexually abused him. In a subsequent investigative interview with the child, I.S. reported that Ken pees in his mouth and that his mother hits him on the head with a plastic green bat. The affidavit asserted that both of these allegations had been investigated multiple times before and that each report of abuse was unsubstantiated, with I.S. recanting the prior allegations of abuse and saying that he lied. The affidavit further asserted that there were allegations that Aaron and his father, David, were fabricating their allegations of abuse to keep I.S. from visiting his mother. Ms. Harper indicated that DHS took an emergency hold on the child due to possible child maltreatment and concerns about both the home of the mother and the father. Ms. Harper stated that allegations of abuse in the mother's home and allegations of mental abuse and cruelty in the father's home, with no clear indication of who was telling the truth, made it impossible to leave I.S. in the care of either parent. On October 4, 2011, the day after DHS filed its petition, the trial court entered an ex parte order for emergency custody finding that immediate DHS custody was necessary to protect the health, safety, and welfare of the child.

A probable-cause hearing was held on October 5, 2011, and Tiffany Harper testified at that hearing. Ms. Harper stated that DHS took emergency custody of I.S. for the reasons stated in her affidavit regarding possible abuse. Ms. Harper was concerned about Aaron's allegations that Kyra and Ken had abused the child, and she was also concerned because there was a prior true report on Aaron and David for mentally abusing I.S. Ms. Harper testified that Aaron acknowledged making numerous prior calls to report suspected abuse of I.S. while in his mother's custody. The records showed a total of seven hotline calls raising allegations against the mother, all of which were unfounded except for an environmental-neglect finding in 2009 that has since been removed from the registry due to the age of the finding. Ms. Harper expressed concerns about both of I.S.'s parents, but she said that she did not know whether I.S. had been abused. Ms. Harper indicated that during previous investigations there was evidence, as confirmed by I.S.'s therapist Wendy Blackwood, that Aaron was coaching the child. Ms. Harper stated that there was a danger of mental abuse if Aaron was coaching I.S. and repeatedly telling him that he had been abused.

Aaron testified that both he and his father had made several calls to report suspected abuse allegedly perpetrated by I.S.'s mother and stepgrandfather. Aaron said that the calls were made after I.S. had told them specific details about being abused.

Kyra testified at the probable-cause hearing that she was presently employed as a live-in nanny, but that she soon expected to get a full-time job at a company called Molex. Kyra stated that she has many family members available and ready to take temporary custody of I.S. should the need arise.

On October 11, 2011, the trial court entered a probable-cause order, finding that probable cause existed to protect I.S. from severe maltreatment and that it was in his best interest to remain outside the custody of his parents. Temporary custody of I.S. was placed with his paternal grandmother,

Holly Stoliker, and both parents were given visitation supervised by DHS. Additionally, the trial court ordered that there be no contact between I.S. and either grandfather.

Aaron Stoliker testified first at the adjudication hearing held on November 29, 2011. Aaron stated that he had concerns that I.S. was being abused during visitation with I.S.'s mother. Aaron said that he had spoken with I.S. about the alleged abuse, and that Aaron's father had made video recordings of some of those conversations. These recordings were admitted into evidence. According to Aaron, neither he nor his father badgered I.S. or suggested what his answers should be to their questions during their interviews. Aaron conceded that he did not believe that the questioning shown in the recordings was appropriate, but he said that they were trying to get proof of I.S. saying that he had been abused. Aaron thought that he or his father had made about nine reports of abuse against Kyra and Ken, and he said that every report was unsubstantiated. However, Aaron stated that when I.S. tells him about abuse, he has to report it to the hotline or else get in trouble. Aaron admitted that there had been two prior true findings of abuse against him and his father for putting I.S. through the interview process. Aaron stated that his father has lived with him to help care for I.S., and that he permits his father to interview I.S. and record the conversations. Aaron acknowledged that in one of those recordings his father placed I.S. in the corner as punishment, and that Aaron stood by while his father yelled at I.S., who was trembling.

Wendy Blackwood, I.S.'s therapist, stated that Aaron brought I.S. to her because he thought I.S. was being abused. Ms. Blackwood has counseled I.S. frequently and she expressed concerns about both Aaron and David, stating that they seemed to be coaching I.S. on what to say during their sessions. Ms. Blackwood testified that Kyra was also present during her counseling of I.S., and she said that Kyra was cooperative and behaved appropriately with I.S. Ms. Blackwood stated that she requested that David stop attending the sessions because he would coach I.S. and say things such as, "tell Ms. Wendy that mom hit you, tell Ms. Wendy what we talked about in the car," and then provide details for I.S. Ms. Blackwood stated that this was confusing to I.S. and that if this continued I.S. could suffer emotional damage. Ms. Blackwood also said that I.S.'s repeated investigatory interviews have caused him psychological distress, as well as behavioral and sleep problems. Ms. Blackwood stated that David can be intimidating, and that I.S. does not want people upset with him and wants to please the important people in his life. She thought that if David were removed from the household, Aaron would do very well parenting his child.

Joni Clark is a criminal investigator with the Faulkner County Sheriff's Office, and she investigated the allegations of abuse. Investigator Clark stated that the allegations included the mother anally penetrating I.S. with toys and urinating and defecating on I.S.'s feet. The allegations also included purported sexual abuse by Ken. After conducting her investigation, Investigator Clark concluded that this was a "horrible" case and that I.S.'s father was at fault. She recommended that charges be filed against both Aaron and David for endangering the welfare of a minor or permitting abuse of a child. Investigator Clark said that this was one of the worst cases she has investigated as far as coaching a child, and she thought that I.S. had suffered mental damage from what had been done to him.

Investigator Tollece Sutter of the Arkansas State Police was also involved in

investigating the allegations of abuse. Investigator Sutter testified that the allegations against Kyra and Ken included sexual penetration as well as cuts, bruises, and welts resulting from abuse against I.S. Investigator Sutter stated that all of the allegations were unsubstantiated, and that as a result of the investigation she made a true finding of extreme and repeated cruelty to a juvenile against Aaron and David. In Investigator Sutter's opinion, the repeated coaching and coercion of I.S. amounted to mental and emotional abuse, placing I.S. in imminent danger of being permanently mentally abused.

Tiffany Harper, the DHS worker assigned to this case, testified that DHS continued to provide reunification services to Aaron and Kyra. Ms. Harper said that the goal of DHS was reunification with Aaron. However, Ms. Harper also stated that she was pleased with Kyra's compliance in this case, and that Kyra was cooperating and doing what was asked of her. Ms. Harper testified that she has visited Kyra's home, that it was appropriate, and that there had been no findings of any neglect or abuse against Kyra other than the finding of environmental neglect more than two years earlier. Ms. Harper said that she did not know of anything that would keep the trial court from ordering temporary custody to Kyra.

Kyra testified that she has been cooperating with Ms. Harper and that she wants I.S. to live with her. Kyra stated that she has never abused her son in any way. She further stated that she has gained employment at Molex and has moved into her own home.

On December 8, 2011, the trial court entered an adjudication and disposition order. The trial court found that I.S. was dependent-neglected because he was at substantial risk of serious harm as a result of abuse and neglect by Aaron as well as Aaron's father. The trial court specifically found that I.S. had suffered emotional abuse pursuant to Ark.Code Ann. § 9–27–303(3)(A)(iii) (Supp.2011), which provides that the definition of "abuse" includes:

> Injury to a juvenile's intellectual, emotional, or psychological development as evidenced by observable and substantial impairment of the juvenile's ability to function within the juvenile's normal range of performance and behavior[.]

The trial court further found that Aaron neglected I.S. by failing to protect I.S. from the abuse perpetrated by Aaron's father, failing to provide a home free from emotional trauma, and failing to provide for I.S.'s emotional needs. *See* Ark.Code Ann. § 9–27–303(36)(A)(iii) & (iv) (Supp. 2011).

The adjudication and disposition order contains exhaustive findings supporting the trial court's conclusion that I.S. was dependent-neglected, including the following observations:

> It was undisputed that Aaron Stoliker (Father) and his Dad (Paternal Grandfather) routinely questioned the minor child when the minor child returned from visitation with Kyra Stoliker (Mother). It is undisputed that the Father and Paternal Grandfather would then record the minor child on video, asking questions about the Mother's home and actions of Mother and others in her home. There is no question in this Court's mind that the questioning and videotaping was emotionally traumatizing to the minor child. The questions were leading, threatening at times, and it was very clear that the minor child was being badgered, coached and encouraged to report negative behavior associated with his Mother's home. In one of the tapes, the minor child ran up and placed his head in the Paternal Grandfather's lap. The paternal Grandfather starts yelling at the child that he tried to kiss his penis. The child stood

in his diaper crying in the corner and he kept saying I didn't mean to and my head turned the wrong way and I didn't mean to touch your penis. All this is going on with the video recorder going and Father standing in the room doing nothing to step in and console the child or stop the Paternal Grandfather from yelling at the child. The minor child clearly knew the videotape was playing. The minor child keeps saying "I didn't mean to *touch* your penis." The Paternal Grandfather would then ask the Father, "state what you heard him say" and the Father would state "I didn't mean to *kiss* your penis." It was uncomfortable for the Court to watch this child crying and saying it was an accident that he placed his head in his Paternal Grandfather's lap and accidentally touched his penis (through his shorts). The paternal grandfather then announces that he is going to call the hotline again … as if what occurred is proof the minor child has been abused.

The trial court expressed its concern that the inappropriate questioning would continue and found that it was damaging to the child. The trial court concluded that it was not in I.S.'s best interest to return to his father full time.

In the adjudication and disposition order, the trial court noted that I.S.'s paternal grandmother, who had been given temporary custody of I.S., discontinued taking I.S. to counseling, and the trial court found that custody with her could not continue. The trial court placed I.S. in the custody of DHS and authorized an immediate trial placement with I.S.'s mother. The trial court ordered a home study of Kyra's home and stated that, if it approved the home study, permanent custody would be given to Kyra because this would provide stability and be in I.S.'s best interest. Aaron was given standard visitation contingent on the paternal grandfather not being in the home, and the trial court ordered that there be no contact between I.S. and either of his grandfathers. The trial court also ordered that there be no further interviews or coaching of the minor child.

■ As an initial issue in this appeal, Aaron Stoliker argues that there was insufficient evidence for the trial court to enter the probable-cause order continuing the removal of I.S. from his home because emergency custody was not necessary to protect the child from immediate danger. However, probable-cause orders are not appealable. *Taylor v. Arkansas Dep't of Human Servs.*, 2010 Ark. App. 725, 2010 WL 4345686. Therefore, Aaron cannot now challenge the trial court's finding of probable cause to remove I.S. from his custody.

The primary point raised by Aaron on appeal is that the trial court erred in adjudicating I.S. dependent-neglected. This finding is appealable pursuant to Arkansas Supreme Court Rule 6–9(a)(1)(A).

■ The juvenile code requires proof by a preponderance of the evidence in dependency-neglect proceedings. Ark.Code Ann. § 9–27–325(h)(2)(B) (Supp.2011). The definition of a dependent-neglected juvenile includes any juvenile who is at substantial risk of serious harm as a result of abuse or neglect. Ark.Code Ann. § 9–27–303(18)(A)(ii) & (v) (Supp.2011). On appeal from a trial court's ruling in a dependency-neglect case, we will not reverse the trial court's findings unless they are clearly erroneous, giving due regard to the trial court's opportunity to judge the credibility of the witnesses. *Arkansas Dep't of Human Servs. v. McDonald*, 80 Ark.App. 104, 91 S.W.3d 536 (2002). A finding is clearly erroneous when, although there is evidence to support the finding, after reviewing all of the evidence the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.*

Aaron Stoliker argues that the trial court erred in its finding that I.S. had been abused. Aaron disputes the trial court's finding that he or his father coached or badgered I.S. about the suspected abuse by the child's mother and maternal step-grandfather, and submits that their questioning of the child was simply aimed at getting to the truth. Aaron further posits that even assuming that he or his father were persistent in interviewing I.S. regarding the suspected abuse, there was no evidence of any injury to the child's emotional development "by observable and substantial impairment of the juvenile's ability to function within the juvenile's normal range of performance and behavior" as required by Ark.Code Ann. § 9–27–303(3)(A)(iii) (Supp.2011). Aaron asserts that the testimony of I.S.'s therapist, Ms. Blackwood, demonstrated that I.S. had no functional impairment, and that the trial court's findings of abuse and dependency-neglect were erroneous.

We hold that the trial court did not clearly err in finding I.S. dependent-neglected on the basis of abuse. Aaron himself acknowledged making repeated allegations of abuse against Kyra and Ken, and said that each time the allegations were unsubstantiated. The trial court found that Aaron and David would record inappropriate interviews with the child that were emotionally traumatizing to I.S., with one of the recordings showing I.S. being yelled at and punished by David while Aaron did nothing to comfort the trembling child. These findings were supported by the evidence and confirmed by the video recordings. Because of their actions, there was a true prior finding by investigators that Aaron and David subjected I.S. to extreme and repeated cruelty.

While Aaron contends that there was a lack of any observable and substantial impairment in I.S.'s ability to function normally, we conclude otherwise. Investigator Clark testified that this was one of the worst cases she had seen as far as coaching a child, and she thought that I.S. had been mentally damaged as a result. Investigator Sutter testified that the coaching and coercion amounted to mental and emotional abuse that placed I.S. in imminent danger of being permanently mentally abused. And contrary to Aaron's argument, I.S.'s therapist, Wendy Blackwood, did not testify that there was no impairment. She testified that I.S. was being psychologically distressed at times and that the coaching was not psychologically or emotionally good for I.S. And in a written report Ms. Blackwood wrote:

There are times when he becomes very anxious, as evidenced by hiding his face, crying, whining, becoming oppositional and refusing to talk. This typically occurs if the subject matter of the session is regarding abuse allegations about his mother. If his dad participates in sessions he often encourages I.S. to talk about being hurt by his mother. This is usually phrased as "I.S. tell Ms. Wendy the truth," "You promised to tell the truth, this time." This seems to indicate that a conversation has occurred previous to the session about the subject matter to be discussed. I.S. often appears to try to please his dad by repeating or agreeing with his dad's description of I.S.'s mother hurting him. However, he often becomes agitated especially if he is not saying what his dad has said. I.S.'s dad will often reprimand him by saying, "That is not what you told me or grandpa, why aren't you telling the truth, I.S. stop lying." *He has impairments in relation to his current parental conflict issues and visitation schedule.*

(Emphasis added.) Deferring to the trial court to judge credibility, on this record

we cannot say that the trial court's finding that Aaron and his father abused I.S. was clearly erroneous.

We further note that the trial court's finding of dependency-neglect was also premised on its alternate finding of neglect based on Aaron's failure to protect I.S. from David's abuse and failing to provide for I.S.'s emotional needs. Aaron does not specifically challenge the trial court's finding of neglect, and this alone would compel affirmance of the trial court's dependency-neglect determination. Furthermore, we have little hesitation in concluding that the trial court did not clearly err in its finding of neglect based on the same evidence supporting its finding of abuse.

■ Finally, Aaron takes issue with the disposition ordered by the trial court wherein the trial court rejected DHS's recommendation to reunify the child with him. Aaron contends that placing custody with Kyra is not in the child's best interest and serves only to punish Aaron.

We hold that issues regarding the trial court's disposition are not properly before us. Arkansas Supreme Court Rule 6–9(a)(1)(B) permits an appeal from a disposition order only if the trial court certifies that there is no reason for delay of an appeal in accordance with Arkansas Rule of Civil Procedure 54(b). However, there is no Rule 54(b) certification in either the transcript or addendum before us. Nor has there been any permanent custody placement. In the absence of a Rule 54(b) certification, a disposition order is not final and appealable. *See Taylor, supra.*

Affirmed.

VAUGHT, C.J., and ABRAMSON, J., agree.