

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-13-1076

| | |
|---|---|
| DOUGLAS HENSON and SHANNON COOPER-HENSON | **Opinion Delivered** April 9, 2014 |
| APPELLANTS | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, ELEVENTH DIVISION [NO. 60JV-13-440] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILDREN | HONORABLE PATRICIA JAMES, JUDGE |
| APPELLEES | AFFIRMED |

**PHILLIP T. WHITEAKER, Judge**

Appellants Douglas Henson and Shannon Cooper-Henson had their parental rights to their children, S.H. and E.H., terminated by an order of the Pulaski County Circuit Court. On appeal, both argue—in separate briefs—that the circuit court's order was not supported by clear and convincing evidence. We find no error and affirm.

I. *Procedural History*

This family has had an extensive history with the Arkansas Department of Human Services (DHS). This is the second time that S.H. and E.H. have been removed from the care of the appellants. The first removal occurred in April 2010 based on a finding of

inadequate supervision and substance abuse.[1] The circuit court adjudicated the children dependent-neglected and ordered numerous services for Shannon and Douglas, including drug and alcohol assessments and treatment. After S.H. and E.H. had been out of their parents' custody for over a year and a half, the court returned custody to the parents in early 2012 and entered an agreed order to close the case.

Less than a year later, however, the second removal occurred. In February 2013, DHS filed a petition for ex parte emergency custody of S.H. and E.H., again for allegations of inadequate supervision, as well as criminal and drug activity by the appellants. DHS received a report stating that Shannon had dropped the children off with an intoxicated man and then stolen the man's truck. DHS also received information that both Shannon and Douglas had been involved in a shoplifting, that Douglas had fled the scene, and that Shannon had been arrested and charged with theft by receiving. A methamphetamine pipe was also found in the truck that Shannon and Douglas had been driving. After Douglas was apprehended, he was charged with manufacturing methamphetamine, fleeing, and absconding.

The circuit court entered an ex parte order for emergency custody, finding that first contact with DHS arose during an emergency when preventative services could not be provided. The court noted that both parents had pending criminal charges, and "therefore, [DHS] is deemed to have made reasonable efforts to prevent or eliminate the need for

---

[1]DHS was contacted after Shannon failed to pick up an older sibling from day care and then did not inquire about his whereabouts for a few days; when DHS contacted her about this situation, she tested positive for drugs. DHS removed all three children.

SLIP OPINION

removing the juveniles from the juveniles' home." The court subsequently made a probable-cause finding. Prior to adjudication, DHS filed a motion for no reunification services, asserting that there was little likelihood that services to the parents would result in successful reunification, citing its extensive history with the family and recent provision of services to the appellants.

The circuit court held a combined hearing on adjudication and DHS's motion. The court adjudicated S.H. and E.H. dependent-neglected, finding specifically that the children had been subjected to neglect, in the form of failure to protect and inadequate supervision, as well as parental unfitness. The court also found by clear and convincing evidence that the motion for no reunification services should be granted.

DHS subsequently filed a petition for termination of parental rights, alleging that the children had been subjected to aggravated circumstances, in that a determination had been made by a judge that there was little likelihood that services to the family would result in successful reunification. Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)(*a*)(*3*)(*B*)(*i*) (Repl. 2009). DHS also alleged the "other factors or issues" ground found in Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)(*a*) (Repl. 2009), noting "new concerns" involving allegations that S.H. had seen Douglas naked and that the children had witnessed their parents having sexual relations.

The circuit court found by clear and convincing evidence that DHS had proved both the aggravated-circumstances and "other factors" grounds. The court also found that the children were adoptable and that the termination was in the children's best interest.

3



Accordingly, the court granted DHS's motion to terminate Shannon and Douglas's parental rights. Both Shannon and Douglas filed timely notices of appeal, and both now assert that there was insufficient evidence to support the circuit court's decision.

## II. *DHS's Procedural Argument*

At the outset, we acknowledge DHS's suggestion that Shannon and Douglas are procedurally barred from challenging the circuit court's finding that they subjected the children to aggravated circumstances. DHS argues that this finding was originally made in the no-reunification-services order, which Shannon and Douglas could have appealed. Having failed to do so, DHS contends, they are barred from raising this issue on appeal. *See, e.g.*, *Lewis v. Ark. Dep't of Human Servs.*, 364 Ark. 243, 217 S.W.3d 788 (2005). We disagree.

Rule 6-9(a) of the Rules of the Arkansas Supreme Court sets out which orders are appealable in dependency-neglect cases, providing in pertinent part as follows:

> (1) The following orders may be appealed from dependency-neglect proceedings:
>
> (A) adjudication order;
>
> (B) disposition, review, *no reunification*, and permanency planning *order if the court directs entry of a final judgment as to one or more of the issues or parties based upon the express determination by the court supported by factual findings that there is no just reason for delay of an appeal, in accordance with Ark. R. Civ. P. 54(b).*
>
> (C) termination of parental rights.

Ark. Sup. Ct. R. 6-9(a) (2013) (emphasis added). The circuit court here entered an order captioned "Adjudication/No Reunification Services Order," with a finding of aggravated circumstances made in conjunction with the court's finding that no further reunification



services would be provided. There is no language, however, either in this portion of the order or anywhere else in the order, comporting with Rule 6-9(a)(1)(B)'s requirement that the court include the equivalent of a Rule 54(b) certificate.

In *Schubert v. Arkansas Department of Human Services*, 2009 Ark. 596, at 5, 357 S.W.3d 458, 461, the supreme court stated that, "[p]ursuant to Rule 6-9(a)(1)(B), disposition, review, [no reunification,] and permanency planning orders are only appealable . . . if the court enters an order in compliance with Ark. R. Civ. P. 54(b) (2009). Thus, not every order entered in a dependency-neglect case can be immediately appealed[.]" *See also Stoliker v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 415, at 12–13, ___ S.W.3d ___, ___ (refusing to reach father's arguments regarding circuit court's disposition order where there was no Rule 54(b) certificate addressing that order). Thus, where, as here, there is no Rule 54(b) language, there is no final order from which Shannon and Douglas could have appealed on the no-reunification-services issue. Accordingly, Shannon and Douglas's arguments are not procedurally barred, and we turn to the merits of their appeals.

### III. *Standard of Review*

Our standard of review in cases involving the termination of parental rights is well established. Arkansas Code Annotated section 9-27-341(b)(3) requires an order terminating parental rights to be based upon clear and convincing evidence. First, section 9-27-341(b)(3)(A) requires a finding by clear and convincing evidence that termination is in the best interest of the juveniles, including consideration of the likelihood that they will be

adopted and the potential harm caused by returning custody of them to the parent.[2] Next, the order terminating parental rights also must be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). The grounds relied on by the trial court in this case were as follows:

> (vii) (*a*) That other factors or issues arose subsequent to the filing of the original petition for dependency–neglect that demonstrate that return of the juvenile to the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent return of the juvenile to the custody of the parent. . . . .

> (ix)(*a*) The parent is found by a court of competent jurisdiction . . . to:

> (*3*)(*A*) Have subjected any juvenile to aggravated circumstances.

> (*B*) "Aggravated circumstances" means:

> (*i*) A . . . determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification[.]

Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Camarillo-Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005). When the burden of proving a disputed fact is by clear and convincing evidence, the question that must be answered on appeal is whether the trial court's finding that the disputed fact was proven by clear and convincing evidence was clearly erroneous. A finding is clearly erroneous when, although

---

[2]Neither Shannon nor Douglas challenges the circuit court's best–interest determination, arguing only that the evidence did not support the court's finding that the statutory grounds had been proved.

there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id*. Such cases are reviewed de novo on appeal. *Calahan v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 508, ___ S.W.3d ___. However, we do give a high degree of deference to the trial court, as it is in a far superior position to observe the parties before it and to judge the credibility of the witnesses. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

IV. *Shannon Cooper-Henson's Appeal*

Shannon argues that the circuit court's finding of aggravated circumstances was not proved by clear and convincing evidence. She cites her four months of sobriety before the termination hearing, her efforts to improve herself even after DHS quit providing reunification services, her employment, and the testimony from a DHS caseworker that she had become "a different mom." Thus, she argues, the circuit court erred in finding that there was little likelihood that services to the family would result in successful reunification.

By the time of the termination hearing, Shannon had been living with her mother since May 2013 and had been working since March 2013; she was in outpatient drug treatment; she was aware of her drug and alcohol problems; and she was currently going to AA/NA meetings three times a week. All of these efforts were taken on her own despite the finding of no-reunification efforts by the court. She admitted, however, that she continued to have unresolved criminal charges and had lied to another circuit court on her affidavit of indigency for the appointment of the public defender.

It is also true that the DHS county supervisor, Deidre Notto, noted that Shannon's recent actions reflected a change in Shannon. This same witness, however, recommended that parental rights be terminated "because of the lack of stability [the children] have received since they have been born." Notto noted that, after the previous case had been closed, the children had been back in their mother's custody less than a year before the new case was opened. She also noted that most of Shannon's pursuit of services came only after DHS filed its no-reunification-services motion, and she said that she felt the instability in Shannon's life would continue because she only stepped up her efforts in April, which had "not even [been] four months."

The court acknowledged and even applauded the progress that Shannon had made since the previous hearing and order. The court, however, also considered Shannon's extensive history with DHS and found that her eleventh-hour efforts to improve her situation were "too little, too late." Further the circuit court specifically found that Shannon "has no credibility with this court." The court cited her "many admitted (and discovered) fabrications in testimony," and the court wondered why, if Shannon had "truly begun to rehabilitate her life, . . . she did not make these changes before now or use the skills from previous services to avoid the children returning to foster care."

Our standard of review requires us to give great deference to the circuit court's ability to observe the parties and to judge their credibility, and we will not reverse a circuit court's factual findings unless they are clearly erroneous—that is, unless we are left with a definite and firm conviction that a mistake has been made. *See Camarillo-Cox*, *supra*.

In *Trout v. Arkansas Department of Human Services*, 359 Ark. 283, 197 S.W.3d 486 (2004), the supreme court affirmed the termination of a mother's parental rights based on a finding of aggravated circumstances where she had not been stable for a sufficient amount of time to indicate that reunification was possible. Although the mother argued that she had resolved the problems that had led to the aggravated-circumstances finding, the supreme court held that to give the mother more time to comply would only ignore the fact that she had consistently failed to comply with the court's orders. *Id.* at 294, 197 S.W.3d at 493.

The *Trout* court also considered the purpose of the termination-of-parental-rights statute, as set out in Arkansas Code Annotated section 9-27-341(a)(3) (Repl. 2009), which is to "provide permanency in a juvenile's life in all instances where the return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time, as viewed from the juvenile's perspective." In affirming the termination of the mother's parental rights, the supreme court observed that the circuit court had been in contact with the family for four years, during which time the mother had repeatedly failed to comply with the court's orders. In addition, the supreme court noted that the circuit court "consistently expressed difficulty with believing [the mother's] testimony, and it was appropriate for the judge to consider the history of [her] appearances before him in determining whether she could be trusted to continue making positive steps." *Trout*, 359 Ark. at 295, 197 S.W.3d at 493. Given the circuit court's experience with the mother and her persistent failure to comply with the court's orders, the supreme court held that the

9

circuit court correctly determined that the mother "was either incapable of correcting the problems or indifferent to the need to do so." *Id.*, 197 S.W.3d at 493–94.

The similarities between *Trout* and the present case are significant. In both, the circuit court had great difficulty in finding the mother to be a credible witness. In both, the court had been involved with the mother and her family for a number of years and had had enough experience to ascertain whether the mother's current progress would continue in the future. Here, the circuit court specifically noted that it was "terminating [Shannon's] parental rights not because of timeline pressure or because she is beyond redemption; it is because the court is not convinced that these monumental changes will last because they are too new and too slow in coming." Given our deference to the court's credibility determinations, we are unable to say that the court's findings were clearly erroneous.

## V. *Douglas Henson's Appeal*

Douglas argues that the circuit court erred in terminating his rights because DHS made no effort to assist him in reunification.[3] Douglas admits that he is currently incarcerated

---

[3]Douglas has also filed a pro se "Motion for Judicial Notice of Adjudicative Facts," asking this court to take judicial notice of numerous matters. He alleges that DHS failed to adequately investigate the facts leading to termination, that DHS's investigation was not impartial, and that he was denied the effective assistance of counsel throughout the proceedings. We decline to take judicial notice of these issues. Under Arkansas Rule of Evidence 201(b), "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by [resort] to sources whose accuracy cannot reasonably be questioned." As Douglas's assertions are little more than unfounded accusations, we decline to take judicial notice of them. Moreover, to the extent that he raises claims of ineffective assistance of counsel, this argument was never raised below. Arkansas appellate courts will not consider a claim of ineffective assistance of counsel on appeal unless it was first raised in the trial court. *Fuller v. Ark. Dep't of Human Servs*, 2014 Ark. App. 9.

following his arrest for possession of methamphetamine with intent to deliver on the night the children were taken into DHS custody. (He asserted at the termination hearing that he intended to accept a plea-bargain offer for five years and hoped to be "out by February.") He argues that, while he is "facing serious charges," he is also attempting to rehabilitate himself. He further maintains that the circuit court failed to consider the likelihood that services to him—separate and apart from services to Shannon—would result in successful reunification with the children.

In *Nichols v. Arkansas Department of Human Services*, 2013 Ark. App. 504, ___ S.W.3d ___, this court affirmed the termination of a father's parental rights, rejecting an argument similar to the one made here. There, the court noted that the father did not take advantage of any of the services offered by DHS before he was incarcerated, and when he did take advantage of those services, it was only after the case plan was several months old and after he had been arrested and imprisoned on a different charge. Most importantly, the court stated, "there was no indication at the termination hearing that the services he completed made him a viable placement option for [the child] or that he would become so within a reasonable amount of time from [the child's] perspective." *Nichols*, 2013 Ark. App. 504, at 9, ___ S.W.3d at ___.

Much the same can be said here. The circuit court found that Douglas had, for at least the previous two hearings, been incarcerated and that he had failed to present evidence or testimony "that he has done anything since his incarceration to support or otherwise maintain

11

a presence in his children's lives."[4] The court noted Douglas's testimony that, if he were to get the children back, his "main plan for the children . . . would be for them to go with their mother or maternal grandmother." The court further found that Douglas was "in no position to care for these children, even if he were to be released from prison soon." The circuit court's findings are supported by the evidence, and we affirm the decision to terminate Douglas's parental rights.

Because only one ground is necessary to support termination, *see Albright v. Ark. Dep't of Human Servs.*, 97 Ark. App. 277, 248 S.W.3d 498 (2007), it is unnecessary to address the appellants' arguments about the "other factors or issues" ground supporting termination.

Affirmed.

GLADWIN, C.J., and WALMSLEY, J., agree.

*Val P. Price*; and *Shannon Holloway*, for appellants.

*Tabitha Baertels McNulty*, DHS Office of Policy and Legal Services; and *Chrestman Group, PLLC*, by: *Keith Chrestman*, for appellees.

---

[4]Douglas acknowledged that he had missed the last court hearing due to his incarceration. He claimed that he had been "clean" for quite a while, but he claimed that he went into a "down spiral" shortly before the children were taken into DHS custody. On cross-examination, Douglas conceded that he had missed the adjudication hearing because he knew that he could not pass a urine test.