
# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-17-592

| | |
|---|---|
| NASHIRA WALKER<br>APPELLANT | **Opinion Delivered:** November 15, 2017 |
| V. | APPEAL FROM THE WASHINGTON<br>COUNTY CIRCUIT COURT<br>[NO. 72JV-17-186] |
| ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND MINOR<br>CHILDREN | HONORABLE STACEY<br>ZIMMERMAN, JUDGE |
| APPELLEES | AFFIRMED |

## KENNETH S. HIXSON, Judge

Nashira Walker appeals after the Washington County Circuit Court filed an adjudication and disposition order finding her children, S.H.(M) (DOB 9-22-2011) and S.H.(F) (DOB 10-11-2013), dependent-neglected. On appeal, appellant argues that (1) the trial court erred in continuing custody of S.H.(M) and S.H.(F) with the Arkansas Department of Human Services (DHS) because DHS failed to prove that it made reasonable efforts to prevent the children's removal, and (2) the trial court erred in finding that returning custody of the children was contrary to the children's welfare and that continuing custody with DHS was in their best interests and necessary to protect their health and safety based on the evidence introduced at the adjudication hearing. We affirm.

### I. *Facts*

DHS has had a long history of involvement with these children and appellant. A protective-services case was opened on August 9, 2016. At that time, DHS offered

parenting classes and a bus pass to appellant to prevent removal of the children. On March 6, 2017, DHS filed a petition for dependency-neglect as to S.H.(M) and S.H.(F). In the attached affidavit, DHS alleged that appellant had not been in compliance with a protective-services case in that appellant had failed to complete twelve hours of parenting classes, obtain counseling, and undergo a psychological evaluation. DHS additionally outlined a series of physical-abuse claims with appellant listed as the alleged perpetrator dating back to 2006.

Approximately a week later, DHS filed a petition for emergency custody and dependency-neglect. In the attached affidavit, DHS additionally alleged that during a March 3, 2017 home visit, appellant admitted that she had not attended parenting classes and that she had used marijuana and cocaine. DHS received yet another referral that appellant was physically abusing S.H.(M) with a deadly weapon on March 9, 2017. During the investigation of that referral, DHS observed a fresh cut on the back of S.H.(M)'s neck, and S.H.(M) stated that appellant had caused it. Appellant stated that she was unsure whether she had caused it, but she admitted that she could have "accidently" scratched him while she was helping him put on his clothes. Therefore, DHS placed a seventy-two-hour hold on the children. The trial court granted the ex parte petition for emergency custody, finding that probable cause existed for the removal, and the trial court subsequently filed a probable-cause order.

An adjudication hearing was held on April 21, 2017. At the hearing, Miranda Collins testified that she was the family-service worker assigned to the case. Collins testified that she had personally seen scarring present on S.H.(M)'s body, and photographs depicting the scars and bruises were admitted into evidence. Collins further testified that appellant had

admitted using cocaine and that she had a positive drug screen in March 2017. Collins indicated that she had concerns about returning custody of the children to appellant after there had been a "true finding" that appellant had physically abused S.H.(M), leading to the protective-services case being opened. Collins testified that the children had been referred to Children's House and that appellant was referred to complete twelve hours of parenting classes and given a bus pass. Collins explained that the purpose of the parenting classes is to help parents learn better parenting and discipline skills, including teaching safe and appropriate discipline techniques. However, appellant attended only two of the twelve scheduled classes. Collins opined that appellant's completion of the parenting classes could have prevented the children's removal. Collins further testified that the children had been doing very well both at home and in school since their removal. However, S.H.(M) still cries and becomes very upset on the way to the supervised visitations with appellant.

Melissa Bedford, a licensed professional counselor, testified that she was seeing S.H.(M) and S.H.(F) for individual and family therapy. Bedford testified that S.H.(M) had been diagnosed with posttraumatic stress disorder; unspecified depressive disorder; child-psychological abuse, confirmed, subsequent encounter; child psychological abuse, confirmed, initial encounter; and parent-child relational problem. Bedford additionally testified that S.H.(F) had been diagnosed with posttraumatic stress disorder; unspecified disruptive-impulse-control-and-conduct disorder; child-physical abuse, suspected, initial encounter; child psychological abuse, confirmed, initial encounter; and child sexual abuse, suspected, initial encounter. S.H.(M) had disclosed to Bedford that he does not feel safe with appellant and that appellant had cut the back of his neck with a knife. S.H.(M) further

SLIP OPINION

disclosed to Bedford that appellant had hurt him but that he felt safe with his "new mom and new dad," referring to his foster parents. Bedford testified that S.H.(F) was very closed off and that S.H.(F) had witnessed appellant physically abusing S.H.(M).

Bedford testified that her personal interactions with appellant were disheartening. Bedford explained that appellant was very abrupt and that she would say very hurtful things in front of her children. For example, appellant told Bedford in front of her children that she did not think that S.H.(M) was a good human being. Therefore, Bedford recommended that the children continue to receive treatment and expressed severe concerns about the children being returned to appellant.

Michelle Rodarte, a family advocate at Children's House, testified that she had worked closely with the family and the teachers since they had begun attending. Rodarte testified that the children had improved since their removal. S.H.(M) was receiving services at Dayspring Behavioral Health and receiving forty-five minutes of speech therapy and forty-five minutes of developmental instruction a week, and S.H.(F) was receiving services at Dayspring Behavioral Health and receiving forty-five minutes of developmental instruction. Since the children's removal, they had not missed a day of attendance. Before their removal, S.H.(F) had 75 percent attendance, and S.H.(M) had 78 percent attendance. Rodarte recommended that the children continue to attend Children's House.

Appellant testified that she is thirty-seven years old; has a total of eight children and four grandchildren; is on disability; and has diabetes, high cholesterol, depression, and ADHD. She testified that although Collins had told her that she needed to go to parenting classes, she denied that Collins had provided any referrals or bus passes to her. Appellant

admitted using cocaine to treat a toothache and that she had also used marijuana in the past, but she denied being a habitual drug user. Appellant further admitted that she had "whooped" S.H.(M) with a phone cord in 2014. However, appellant indicated that the pictures introduced into evidence of the scars and bruises were worse than the actual injuries. She further indicated that she did not know how he received the injury on the back of his neck, denied cutting him with a knife, and suggested that she may have cut his neck while cutting his hair. Appellant requested that the children be returned to her custody.

After the hearing and oral arguments, the trial court filed an adjudication and disposition order. In the order, the trial court found that DHS had been involved with the family since 2006 and that a protective-services case had been opened on August 9, 2016. The trial court further found that DHS had provided services through that open case and that the services "did not prevent removal due to Mother admitted to using THC and cocaine. There were allegations of physical abuse in the home." Additionally, the trial court found that "the efforts made to prevent removal of the juveniles were reasonable based on the family and juveniles' needs." The trial court found by clear and convincing evidence, even though it noted that the burden of proof was only a preponderance of the evidence, that the children were dependent-neglected as defined by the Arkansas Juvenile Code, because the children were at substantial risk of serious harm as the result of abuse (physical and emotional), neglect, and parental unfitness. In the adjudication and disposition order, the trial court based its determination on the following additional findings:

> [T]he [Court has determined], after considering the evidence presented at this hearing, that these allegations in the petition and affidavit are true and correct. Specifically, based on the testimony of all of the witnesses, including Melissa Bedford and Mother, that [S.H.(M)] has been physically abused by mother. That abuse was

not a one-time, spank on the bottom.  The Court finds that the pictures of [S.H.(M)] are horrible.  Mother testified that she "whupped" [S.H.(M)] with a phone cord previously when he was three and a half years old.  The Court finds that that is not appropriate discipline, especially since [S.H.(M)] was approximately 3 and a half years old at the time Mother testified that spanking with a phone cord occurred.  The uncontroverted testimony today is that [S.H.(M)] has Post-Traumatic Stress Disorder.  The Court finds that [S.H.(M)'s] disclosures to Melissa Bedford are completely credible that his mother hits him, and his action, clearly show that he has been subjected to ONGOING PHYSICAL, PSYCHOLOGICAL, AND EMOTIONAL ABUSE BY HIS MOTHER.  The court does not believe mother's testimony that she has not "whupped" him since 2014.  Given the counselor's very credible testimony and the pictures, the court has no doubt that mother has been physically abusing [S.H.(M)] regularly.  DHS did provide reasonable efforts to mother to prevent removal.  Not only did DHS make a referral for Parenting Classes for Mother, the most important service that was offered to Mother was counseling for her children and family counseling to work with the children's counselor on ways to help the children; however, mother made it clear to the counselor that she did not wish to participate or follow the counselor's suggestions.  Mother only attended two (2) of those appointments with the children's counselor from October 2016 to March 2017.  [S.H.(M)] has Post Traumatic Stress Disorder, and shows all the signs that he has been physically, emotionally, and psychologically hurt by his mother.  Mother told Ms. Bedford, the therapist, that [S.H.(M)] "is a disgusting human being and probably can't learn the things you are talking about."  (See State's exhibit 12).  The Court finds that all of the signs of physical and emotional abuse are there.  The photos introduced of [S.H.(M)'s] back and buttocks show horrific scars from physical abuse by mother.

The Court finds that since coming into care, [S.H.(M)'s] whole demeanor has changed.  Now that he is in a foster home, he is happy and smiling.  [S.H.(M)] is doing well in school.

The Court also finds that it was not appropriate for Mother to use cocaine to alleviate her toothache, regardless of the amount of cocaine used.

The Court notes that the testimony of MELISSA BEDFORD, the children's therapist, was CREDIBLE.

4.  This case was thoroughly reviewed by this Court on this date and the juveniles are in need of the services of the Arkansas Department of Human Services.  Return to the custody of the parent is contrary to the welfare of the juveniles and continuation of custody in the Arkansas Department of Human Services is in the best interests of and necessary to the protection of the juvenile's health and safety.

. . . .

6.  Proofs of service, adjudication recommendations, a case plan, Social History for the family, drug screen results for Mother, parenting class certificates for Mother, home evaluation for Mary Walker, photographs of scarring on [S.H.(M)'s] neck, back, and buttocks, DaySpring court reports for [S.H.(M)] and [S.H.(F)], Children's House court report for [S.H.(M)] and [S.H.(F)] were identified and entered into the record.

7.  This case was thoroughly reviewed by this Court on this date and the juveniles are in need of the services of DHS.  The juveniles shall remain in the custody of DHS, as such placement is in the best interests of and necessary for the protection of the juveniles' health and safety, as return of the juveniles to the custody of their mother is contrary to the juveniles' welfare.

8.  The Court has reviewed the case plan developed by DHS and approves the case plan.  The Court determines that the case plan meets the juveniles' special needs and best interests, and specifically describes how the juveniles' health and safety needs will be addressed.

9.  The goal of this case shall be: reunification of the juveniles with their mother.

10.  Visitation shall occur as follows:
Mother shall have visits with the children one (1) time per week for one (1) hour per visit.
Those visits shall be CLOSELY supervised by DHS.
If Mother acts inappropriately during the visits, her visits shall stop.

This timely appeal followed.

## II. *Adjudication Findings*

Adjudication hearings are held to determine whether the allegations in a petition are substantiated by the proof.  Ark. Code Ann. § 9-27-327(a)(1)(A) (Repl. 2015). A dependent-neglected juvenile is one at substantial risk of serious harm as the result of, among other things, abuse, neglect, or parental unfitness committed against the juvenile, a sibling, or another juvenile.  Ark. Code Ann. § 9-27-303(18)(A).  Dependency-neglect allegations must be proved by a preponderance of the evidence.  Ark. Code Ann. § 9-27-325(h)(2)(B). In dependency-neglect cases, the standard of review on appeal is de novo, but we do not

reverse the trial court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Samuels v. Arkansas Dep't of Human Servs.*, 2016 Ark. App. 2, 479 S.W.3d 596. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In reviewing a dependency-neglect adjudication, we defer to the trial court's evaluation of the credibility of the witnesses. *Id.* The focus of an adjudication hearing is on the child, not the parent; at this stage of a proceeding, the juvenile code is concerned with whether the child is dependent–neglected. *Id.*

Appellant does not contest the trial court's specific findings regarding dependency-neglect. Instead, appellant first argues on appeal that the trial court erred in continuing custody of S.H.(M) and S.H.(F) with DHS because DHS failed to prove that it made reasonable efforts to prevent the children's removal. We disagree.

Arkansas Code Annotated section 9-27-327(a)(2) provides that at the adjudication hearing, "[u]nless the court finds that a removal occurred due to an emergency and the agency had no prior contact with the family or the child, evidence shall be presented to the court regarding all prior contact between the agency and the juvenile or the family before a finding of reasonable efforts to prevent removal by the Department of Human Services." In her brief, appellant argues that because DHS had prior contact with appellant and the children, the emergency exception to allow the trial court to deem that reasonable efforts were made does not apply and that DHS was required to present evidence of its reasonable efforts. Appellant further argues that DHS failed to provide critical services that would have

prevented the removal of her children.  Although appellant acknowledges that evidence was presented that DHS offered services to her, such as referring her to complete parenting classes and providing her a bus pass, she specifically alleges that she should have been referred to a "specialized parenting class to help her learn more effective parenting techniques for disciplining her children" and that the services provided to her were not reasonable. Therefore, she argues that the trial court's erroneous findings to the contrary render the resulting adjudication and disposition order void and reversible.

DHS concedes that the emergency exception was not applicable because the agency's first contact with the family was not at the time of removal.  However, DHS argues that the trial court's findings should still be affirmed.  First, the trial court's finding that reasonable efforts were made to prevent the need for removal of the children is not clearly erroneous. Collins specifically testified that one of the purposes of parenting classes is to provide safe and appropriate discipline techniques but that appellant failed to take advantage of those services.  Moreover, even if the trial court did not find that reasonable efforts had been made, Arkansas Code Annotated section 9-27-335(e)(2)(C) still would have allowed the trial court to remove the children and transfer custody to DHS "despite the lack of reasonable efforts by the department to prevent the need for out-of-home placement if the transfer is necessary . . . to protect the juvenile's health and safety."  Here, the trial court specifically found in its order that "continuation of custody in the Arkansas Department of Human Services is in the best interests of and necessary to the protection of the juvenile's health and safety."  Because we cannot hold that these findings were clearly erroneous, we affirm on this point.

### III.  *Disposition Findings*

Next, appellant argues that the trial court erred in finding that returning custody of the children was contrary to the children's welfare and that continuing custody with DHS was in their best interests and necessary to protect their health and safety based on the evidence introduced at the hearing.  Appellant concedes in her brief that there was "dysfunction within [the] family" and that the "family [was] in need of services."  However, she specifically argues that the children should have been returned to her custody while these services were being provided to the family as the "least restrictive disposition consistent with the best interests and welfare of the juvenile and the public."  Ark. Code Ann. § 9-27-329(d).  However, pursuant to Arkansas Supreme Court Rule 6-9(a)(1)(B), disposition, review, and permanency-planning orders are appealable only if the court enters an order in compliance with Arkansas Rule of Civil Procedure 54(b).  Thus, not every order entered in a dependency-neglect case can be immediately appealed.  *See Schubert v. Ark. Dep't of Human Servs.*, 2009 Ark. 596, 357 S.W.3d 458.  As in this case, the trial court in *Stoliker v. Arkansas Department of Human Services*, 2012 Ark. App. 415, 422 S.W.3d 123, filed an "adjudication and disposition order."  Although we addressed a challenge to Stoliker's arguments on appeal regarding the adjudication, finding his child dependent-neglected, we explained that we were unable to address his arguments regarding the disposition.  *Id*.  Stoliker had argued that the court's failure to reunify his child with him and placing custody with the child's mother was in error.  *Id*.  We explained that issues regarding a trial court's disposition are not properly before us under Rule 6-9(a)(1)(B) in the absence of a Rule 54(b) certification.  *Stoliker, supra*.  Because the order here does not include a Rule 54(b)

10

certificate, the disposition findings are not final and appealable.  Thus, we are unable to address the merits of appellant's arguments in her second point on appeal.

Affirmed.

GLADWIN and GLOVER, JJ., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor children.