Cite as 2020 Ark. App. 513

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CV-20-390

|  |  |
|---|---|
| MARY JOHNSON<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered:** November 4, 2020<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TENTH DIVISION<br>[NO. 60JV-20-12]<br><br>HONORABLE JOYCE WILLIAMS WARREN, JUDGE<br><br>AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Mary Johnson appeals a Pulaski County Circuit Court adjudication order finding her children dependent-neglected.[1] On appeal, Johnson argues that there was insufficient evidence to support the court's finding of dependency-neglect or to warrant its decision to remove the children from her custody. We affirm the court's adjudication of dependency-neglect but do not address the circuit court's disposition order as it is not properly before us.

---

[1]Phillip Warfield is the legal father of P.W. Charles Merriweather is the legal father of CM1 and CM2. Kameron Bradley, Sr., is the putative father of KB1 and KB2, but the court found that he had not established significant contacts and that his parental rights had not attached. Dakota Starks is the putative father of LS, but the court found that he had not been served with a notice of proceeding, and his rights as a putative father, as well as his party status, were unresolved. None of the legal or putative fathers have appealed any of the decisions of the court and, thus, are not parties to this appeal.

Johnson is the mother of seven children—LS, ZJ, twins KB1 and KB2, twins CM1 and CM2, and PW.[2] ZJ, a thirteen-year-old female, has diagnoses of nonverbal autism and Prader-Willi syndrome.[3] In January 2020, the Arkansas Department of Human Services (DHS) exercised two consecutive seventy-two-hour holds on the children. The holds were initiated after DHS responded to reports from law enforcement that ZJ was outside alone, partially nude, and eating from a dumpster. When ZJ was returned home, the house was found to be in a deplorable condition. After the second hold, DHS filed a petition for dependency-neglect seeking ex parte emergency custody based on an affidavit detailing the Johnson family's history with DHS; the multiple times the police were required to intervene when ZJ was found wandering unclothed and eating trash; missed doctors' appointments; missed school; multiple moves; and the unacceptable conditions in which the children had been found living. Based on the petition and affidavit, the circuit court granted the petition for emergency custody.

Subsequently, the court conducted a probable-cause hearing and concluded that probable cause had existed to grant emergency custody of the children; however, it determined that probable cause no longer existed for the removal of the children and that it was safe for them to return to Johnson's custody. The court set the matter for an adjudication hearing.

---

[2]The children are aged fifteen, thirteen, ten, ten, seven, seven, seven, and two respectively.

[3]Prader-Willi syndrome is a genetic disorder in which the sufferer exhibits strong urges to eat food and which can result in unusual food-seeking behaviors, such as eating garbage.

At adjudication, the court heard testimony from a DHS caseworker; Johnson; and Charles Merriweather, the legal father of CM1 and CM2. After hearing the evidence, the circuit court entered an order adjudicating the children dependent-neglected as the result of neglect and the parental unfitness of Johnson. The court placed custody of PW with her father, Phillip Warfield, but awarded custody of the remaining six children to DHS.

On appeal, Johnson argues that the evidence presented at adjudication did not support the court's finding of dependency-neglect and that there was insufficient evidence to support the court's removal of the children from her custody. We address each issue in turn.

## I. *Dependency-Neglect*

Dependency-neglect allegations must be proved by a preponderance of the evidence. *Araujo v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 181, 574 S.W.3d 683. Here, DHS pled dependency-neglect based on inadequate supervision, environmental neglect, educational neglect, medical neglect, and parental unfitness. The court conducted an adjudication hearing with the purpose of determining whether the allegations in the petition were substantiated by the proof. *Id*. Johnson argues that DHS offered no evidence to support those claims.

In our review of a dependency-neglect adjudication, we will not reverse the circuit court's findings unless they are clearly erroneous. *Id*. A finding is clearly erroneous when, even though there is evidence to support it, on the entire evidence we are left with a definite and firm conviction that the circuit court made a mistake. *Id*. Here, the court found the children to be dependent-neglected due to parental unfitness and neglect. When we review

the evidence presented, focusing on the children and the risk of harm to them, we find the circuit court's findings in this regard were not clearly erroneous.

The Juvenile Code defines a dependent-neglected juvenile to include any juvenile who is at substantial risk of serious harm as a result of neglect or parental unfitness. Ark. Code Ann. § 9-27-303(18)(A) (Supp. 2019). Neglect is defined as a parent's failure to appropriately supervise a child resulting in the child being placed in inappropriate circumstances creating a dangerous situation or a situation that puts the child at a risk of harm; or a parent's failure to appropriately supervise a child resulting in the child being left alone at an inappropriate age or in inappropriate circumstances creating a dangerous situation or a situation that puts the child at risk of harm. Ark. Code Ann. § 9-27-303(35)(A)(vii), (viii).

Applying this statutory definition of neglect to the evidence before the court, we find no error. DHS alleged that Johnson had not adequately supervised ZJ, who repeatedly escaped the house, unsupervised, in the middle of the night. In response, Johnson admitted that this had occurred and even testified that she was worried for ZJ's health and safety when she escaped. Johnson also testified that ZJ would sometimes become violent, even toward the other children, and had caused damage to the home. Johnson indicated that ZJ had broken out windows, had flooded the house, and had even almost burned it down. Finally, Johnson admitted that she had been unable to control ZJ's behavior and conceded that she needed help with her, but adamantly opposed help from DHS. This falls within the very definition of neglect. Ark. Code Ann. § 9-27-303(36)(A)(viii)*(b)* (defining neglect as the

"failure to appropriately supervise the juvenile that results in the juvenile being placed in . . . [a] situation that puts the juvenile at risk of harm").

The Juvenile Code also defines neglect as a parent's failure to provide for a child's physical, mental, or emotional needs and failure to provide a shelter that does not pose a risk to the child's health or safety. Here, the court heard evidence that ZJ's medical condition impaired Johnson's ability to provide for the needs of her other six children. In fact, her trial counsel confirmed that Johnson needed help with ZJ and conceded that Johnson's ability to focus on the rest of the children "may be hampered" because ZJ is "seven kids in one." Johnson's admitted inability to properly supervise and/or control ZJ's behavior places ZJ and the other children, either directly or indirectly, in situations that put them at a risk of harm. Moreover, "[t]he statutory definition of a neglected child does not require proof of actual harm or impairment having been experienced by the child. The term 'substantial risk' speaks in terms of future harm." *Maynard v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 82, at 7, 389 S.W.3d 627, 630. It is important to remember that at an adjudication hearing, the focus is on the child, not the parent. *Seago v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 767, 360 S.W.3d 733.

The court further adjudicated dependency-neglect on a finding of parental unfitness. We find no error in this finding. The Juvenile Code does not specifically define "parental unfitness," but case law is clear that it is not necessarily predicated on the parent's causing some direct injury to the child in question because the Code's paramount concern is protecting dependent-neglected children in general. *Bean v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 350, at 6, 498 S.W.3d 315, 318–19.

5

Here, the court heard evidence concerning ZJ and her serious medical issues as well as evidence that one or more of the other children suffer from asthma and seizures that need to be managed. The court also heard evidence that the children have an unstable home life. The house from which the children were removed was clearly inappropriate. There were holes in the walls, trash on the floors, and human feces in a trash can. Pictures of that home were introduced into evidence. Johnson, rather than deny the condition of the house, downplayed it claiming that the children had not cleaned their rooms, that the police had flipped the bedroom furniture, and that ZJ had done some of the damage.[4] The court found Johnson's testimony in this regard to be not credible. Finally, there was evidence presented that the children had missed twenty or more days of school. While Johnson denied this, she admitted that she had difficulty getting the children to school on time. We defer to the circuit court's superior position to observe the parties and judge the witnesses' credibility. *Id.* While Johnson argues that DHS failed to prove its allegations of medical, environmental and educational neglect, we conclude that the court did not err in assessing the relevancy and weight of these allegation in its finding of parental unfitness.

To boil it all down, the court had before it evidence that Johnson is a single parent with seven children. One of the children, ZJ, is severely autistic, nonverbal, and has Prader–Willi syndrome, which prevents her from feeling full and causes her to eat garbage. ZJ could

---

[4]We recognize that Johnson argues on appeal that because she no longer lives in that home and because DHS presented no evidence that her current home was inappropriate, the evidence presented was not sufficient to support a continued finding of parental unfitness or neglect. However, the condition of Johnson's previous home is relevant to the issue of whether the children had suffered from neglect or parental unfitness at the hands of Johnson and whether the children were still potentially at risk of such. Thus, such evidence can lend support to a finding of dependency-neglect.

be violent at times, even toward the other children. She would sneak out of the house, and the measures Johnson took to prevent her escape were not successful. Johnson even admitted that she feared for ZJ's safety and needed help with her care. In addition to ZJ, Johnson has six other children, one or more with medical issues including seizures and asthma. Her housing is unstable; she moved four times in one year. From pictures, we know that at least one of those homes was not suitable for children in that it was filthy—with trash on the floor and feces in a trash can—and had holes in the walls. Clearly this was not an environment suitable for any child, let alone children with underlying health conditions. And, although sparse, there was testimony that the children, while in school, had either missed classes or been late. Accordingly, there was sufficient evidence presented from which the circuit court could find by a preponderance of the evidence that these children were dependent-neglected.

## II. *Disposition*

Johnson's final issue is that there was insufficient evidence to support the circuit court's decision to remove the children from her custody. DHS and the attorney ad litem correctly argue that the circuit court's custody disposition is not appealable without a proper Rule 54(b) certification. Johnson appealed from the order of adjudication, and this order did not contain a 54(b) certificate as to the disposition of the children.

In *Walker v. Arkansas Department of Human Services*, 2017 Ark. App. 627, at 10–11, 534 S.W.3d 184, 190, we explained:

> [P]ursuant to Arkansas Supreme Court Rule 6-9(a)(1)(B), disposition, review, and permanency-planning orders are appealable only if the court enters an order in compliance with Arkansas Rule of Civil Procedure 54(b). Thus, not every order entered in a dependency-neglect case can be immediately appealed. *See Schubert v.*

*Ark. Dep't of Human Servs.*, 2009 Ark. 596, 357 S.W.3d 458. As in this case, the trial court in *Stoliker v. Arkansas Department of Human Services*, 2012 Ark. App. 415, 422 S.W.3d 123, filed an "adjudication and disposition order." Although we addressed a challenge to Stoliker's arguments on appeal regarding the adjudication, finding his child dependent-neglected, we explained that we were unable to address his arguments regarding disposition. *Id*. Stoliker had argued that the court's failure to reunify his child with him and placing custody with the child's mother was in error. *Id*. We explained that issues regarding a trial court's disposition are not properly before us under Rule 6-9(a)(1)(B) in the absence of a Rule 54(b) certification. *Stoliker, supra*. Because the order here does not include a Rule 54(b) certificate, the disposition findings are not final and appealable.

Since the adjudication order on appeal does not contain a Rule 54(b) certification, the circuit court's disposition is not final and appealable.

Likewise, we are mindful that after a separate disposition hearing, the court entered a separate disposition order. In that order, the court ordered DHS to retain custody of LS, ZJ, KB1, KB2, CM1, and CM2 and granted permanent custody of PW to Phillip Warfield and closed the case as to her. The circuit court's disposition as to PW is final and appealable under Rule 2(d) of the Arkansas Rules of Appellate Procedure–Civil. *See Minor Children v. Ark. Dep't of Human Servs.*, 2019 Ark. 243, 582 S.W.3d 843. However, Johnson did not file a timely notice of appeal from this disposition order—only from the adjudication order; nor did she file an amended notice of appeal designating this order. Thus, this issue is not properly before us.

Affirmed.

HARRISON and SWITZER, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Callie Corbyn*, Office of Chief Counsel, for appellee.

*Kimberly Bibb*, attorney ad litem for minor children.