Cite as 2022 Ark. App. 489

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-22-282

| | | |
|---|---|---|
| | | **Opinion Delivered** November 30, 2022 |
| CHARLES GABEL | | |
| | APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26JV-21-320] |
| V. | | |
| | | HONORABLE LYNN WILLIAMS, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | | |
| | APPELLEES | AFFIRMED |

**KENNETH S. HIXSON, Judge**

There are four children involved in this dependency-neglect case: Minor Child 1 (MC1) (DOB 01-19-18), Minor Child 2 (MC2) (DOB 02-13-09), Minor Child 3 (MC3) (DOB 11-03-04), and Minor Child 4 (MC4) (DOB 03-17-10). However, MC2, MC3, and MC4 have a different father. This appeal concerns only MC 1 and putative father appellant Charles Gabel. Gabel appeals after the Garland County Circuit Court filed an adjudication order finding MC1 and the other involved children dependent-neglected. Appellant was found to be MC1's putative parent in the adjudication order. On appeal, appellant generally argues that we must reverse and remand the adjudication of dependency-neglect because the

circuit court failed to make the requisite findings concerning him as the noncustodial parent, failed to order a DNA test, and failed to award him visitation with MC1.[1] We affirm.

## I. *Relevant Facts*

The Arkansas Department of Human Services (DHS) has a history with this family. The instant dependency-neglect case arose after Kim Tarkinton, the children's mother, appeared in circuit court on November 18, 2021, in a separate juvenile-court case involving MC3. MC1 accompanied her mother to court. Ms. Tarkinton was actively under the influence during the court proceedings and subsequently tested positive for methamphetamine and cocaine at that time. As such, Division II Circuit Judge, Cecilia Dyer, ordered DHS "to take a 72 hour hold on the juvenile [MC1]." Thereafter, DHS filed a petition for dependency-neglect on November 22, 2021.

In its petition, DHS explained that it had exercised a seventy-two-hour hold on MC1 on November 18, 2021, pursuant to the order issued by Judge Dyer. DHS explained that Ms. Tarkinton is the biological mother of all four children and that James Emerson is the father of MC2, MC3, and MC4 because he was married to Ms. Tarkinton at the time of their birth. DHS alleged that appellant is the putative father of MC1 "because he was not married to the mother at the time of birth and paternity has not been established." MC2,

---

[1] In the adjudication order, Kim Tarkinton is named as the mother and parent of all four minor children, and James Emerson is named as the other parent and father of MC2, MC3, and MC4. Because neither Ms. Tarkinton nor Mr. Emerson filed a notice of appeal from the adjudication order, neither is a party to this appeal. Further, because appellant is listed as the putative parent of only MC1, the findings related to the other three minor children are not at issue in this appeal.

MC3, and MC4 were living with their father, Mr. Emerson. MC1 was living with Ms. Tarkinton at the time of the removal by DHS. In the attached affidavit, DHS alleged that after it had received Judge Dyer's order, a DHS family-service worker (FSW) met with Ms. Tarkinton. Appellant took MC1 to the FSW. The affidavit further alleged that MC1 was "removed from the physical custody of Kimberly Tarkinton and Charles Gabel and the legal custody of Kimberly Tarkinton on 11/18/2021 at approximately 4:30 pm because circumstance or conditions of Kimberly Tarkinton present an immediate danger to the health or physical well-being of the juveniles." DHS concluded that the other children, MC2, MC3, and MC4, should remain in the physical and legal custody of Mr. Emerson and that Ms. Tarkinton should be restricted from removing those children from Mr. Emerson's care. The circuit court granted the petition and filed an ex parte order granting the petition for emergency custody and an order for protection of juveniles from immediate danger. In the order, the circuit court found that probable cause existed for removing MC1 from the legal custody of Ms. Tarkinton and from the physical custody of both Ms. Tarkinton and appellant. It further found probable cause existed to restrict Ms. Tarkinton from removing the other children from Mr. Emerson and from having any unsupervised contact with the children.

After a probable-cause hearing in which appellant attended with counsel, the circuit court filed a probable-cause order on December 22, 2021. In relevant part, it found that there was probable cause that the emergency conditions necessitating MC1's removal from Ms. Tarkinton's custody continued. However, it found that MC1 could be returned home

3

in appellant's care on a trial basis pending adjudication. It further ordered that Ms. Tarkinton's visitation with the children "be suspended until at least the adjudication hearing."

An adjudication hearing was held on February 2, 2022. At the hearing, Brock Baker testified that he is currently the FSW assigned to the case. Mr. Baker explained that in the beginning of the case, there was another FSW assigned, but it was quickly reassigned to him. Mr. Baker testified regarding the case history as already outlined above. He also testified that since the probable-cause hearing, Ms. Tarkinton had refused to undergo a hair-follicle screening or drug-and-alcohol assessment despite DHS's efforts to set up appointments. Moreover, Ms. Tarkinton had tested positive for amphetamines, methamphetamine, and marijuana on January 20, 2022, in the other separate juvenile-court case.

Regarding appellant, Mr. Baker testified that DHS had attempted trial-home placement with him; however, DHS had to terminate that trial-home placement on January 8, 2022, because there was no electricity in appellant's trailer, and the temperature was supposed to drop to an unsafe level that evening. Mr. Baker noted that, other than appellant's residence not having electricity and only one propane heat source at the time of the trial-home placement, the rest of the home was clean and appropriate. Mr. Baker explained that he did receive notice that the electricity had been restored two days later. However, DHS did not set up any further trial-home placement because, in addition to the electricity being an issue, appellant had allowed Ms. Tarkinton to return to his home despite the fact that that the court had ordered no visitation between MC1 and Ms. Tarkinton.

4

Additionally, although DHS staff had attempted to visit the home on multiple subsequent occasions, including the day before the hearing, staff was not allowed in the home. It was reported that staff would "hear things in inside the home, but no one would come to the door." Mr. Baker testified that "[t]he porch light on the home was on yesterday, so I believe that means there's probably power in the house now, but we did not get in the home to confirm that." Further, Mr. Baker testified that appellant had refused to provide a drug screen, despite having been asked on three occasions, but he did admit that appellant had denied any current drug use.

Appellant testified that Ms. Tarkinton is his wife and that MC1 is his child. Appellant admitted that he did not have electricity at the home the day the trial-home placement ended, but he explained that he had paid the bill that day to have electricity restored the next day. Appellant claimed that he had asked for MC1 to be returned to his home after the electricity was restored, but he stated he received no response from DHS. Appellant denied that he refused to provide drug screens and stated that he had submitted every time he was asked to do so. He admitted that, although he has had drug issues in the past, he was not currently using drugs. He admitted that he knew Ms. Tarkinton had tested positive for illegal substances. Appellant asked that MC1 be allowed to return home "where [MC1] belongs" and explained that he had electricity with central heat and air at the time of the hearing.

On cross-examination, appellant admitted that he allowed Ms. Tarkinton back into his home even though the court had ordered no visitation between Ms. Tarkinton and MC1. He additionally explained that he previously had been addicted to methamphetamine but

stated that he had been sober for years. Appellant additionally claimed that, despite knowing that Ms. Tarkinton was using methamphetamine, she did not ever use drugs around him or MC1. Appellant further admitted that he had been at home the day before the hearing but claimed that he never heard DHS knocking at his door. Appellant testified that Ms. Tarkinton's job as a spiritual adviser supported their family and that he did not work full time but instead worked "side jobs." Appellant additionally admitted that he had not developed a plan with Ms. Tarkinton should MC1 be returned to the home if Ms. Tarkinton was not permitted to live in the home with him. He, however, stated that "if she feels like she's ordered to go, then she will definitely go."

Ms. Tarkinton testified that she had married appellant after MC1's birth. She admitted that she had previously tested positive for drugs. She further admitted that she had not moved out of the home and that she was still living in the home at the time of appellant's trial placement. At first, she claimed that she had assumed that she just "wasn't supposed to be left [unsupervised] with [MC1]" and not that she was not permitted to be in the home. However, later in the hearing, she admitted that she had received a copy of the probable-cause order stating that she was not allowed to be in the home. She stated that she did not move out because she did not have anywhere to go. Ms. Tarkinton agreed that she would go to rehabilitation or stay with neighbors or friends if she needed to do so. That said, Ms. Tarkinton admitted that she has had difficulty following court orders in the past. In fact, she explained that Judge Dyer in the other separate juvenile-court case had her handcuffed

and placed "in the back room for about two hours" because she had "refused to take a drug screen."

At the conclusion of the hearing, the circuit court orally announced that it was finding the children dependent-neglected. The circuit court specifically addressed appellant and explained that Ms. Tarkinton was required to be out of the home before MC1 could be placed back in the home. The circuit court further stated that appellant would have to certify to DHS that Ms. Tarkinton had moved out of the home and that if DHS should discover that Ms. Tarkinton is in the home at the same time MC1 is in the home, MC1 would be removed. Thereafter, appellant specifically asked the circuit court to clarify whether Ms. Tarkinton was able to communicate or have any visitation with her children. The circuit court explained that Ms. Tarkinton's visitation was suspended and that she was to have "[n]o contact" until DHS was able to certify that she was clean and sober. Thereafter, the hearing concluded.

The circuit court subsequently filed a written adjudication order on February 4, 2022, finding the children dependent-neglected and making the following relevant findings:

> 5. Charles Gabel is a defendant because he is a putative parent for the purposes of the Arkansas Juvenile Code as he has presented evidence of significant contact [MC1]. Specifically, [MC1] has resided in his home with the juvenile's mother for some time. His rights as a putative parent have attached. However, he has not provided evidence to the Court to establish paternity pursuant to ARK. CODE ANN. § 9-27-325.
>
> . . . .

7

11. The Court notes the lack of candor by Ms. Tarkinton and Mr. Gabel regarding the circumstances surrounding their lack of working utilities and Ms. Tarkinton's remaining in the home since the probable cause hearing. . . .

12. The Court finds that [MC1] could safely return to the home with Mr. Gabel on a trial home placement on the condition that Ms. Tarkinton and Mr. Gabel convince the Department that Ms. Tarkinton is out of the home and residing elsewhere. If the Department discovers that Ms. Tarkinton remains in or has returned to the home while [MC1] is on a trial home placement, the Department is certainly free to end that placement. If Ms. Tarkinton admits to an inpatient drug treatment facility where [MC1] could be placed with her, the Court defers to the professional judgment of the Department on whether it would be in the best interest of the juvenile.

13. Visitation shall be at the reasonable discretion of the Department; visitation and contact of the mother with her children with Mr. Emerson remains suspended and shall not resume unless and until Ms. Tarkinton proves to the Department that she is clean and sober.

14. The goal shall be reunification; the case plan developed by the Department is approved.

15. The parents are ordered to participate and attend all visitation scheduled with the juveniles; to schedule and keep all appointments; to obtain and maintain a safe, suitable, and appropriate home for self and the juveniles; to maintain an environment free from illegal substances and other health/safety hazards; to obtain and maintain adequate income to support self and the juveniles; to request assistance for transportation from the Department forty-eight (48) hours in advance; to cooperate with the Department; to permit the Department to inspect the home; to participate in any service as may be requested by the Department; to demonstrate stability and the ability to provide for the health, safety, and welfare of the juveniles; to maintain consistent contact with the Department and with the juveniles; and to keep the Department informed of a current address.

. . . .

17. Mr. Gabel testified today that he is clean and sober and has not used methamphetamine in years; the Court will not order Mr. Gabel to participate in urine or hair strand drug screens unless the Department has evidence that he has relapsed.

This appeal followed.

8

## II. *Standard of Review*

Adjudication hearings are held to determine whether the allegations in a petition are substantiated by the proof. Ark. Code Ann. § 9-27-327(a)(1)(A) (Repl. 2020). A dependent-neglected juvenile is one at substantial risk of serious harm as the result of, among other things, abandonment, abuse, neglect, or parental unfitness committed against the juvenile, a sibling, or another juvenile. Ark. Code Ann. § 9-27-303(17)(A) (Supp. 2021). Dependency-neglect allegations must be proved by a preponderance of the evidence. Ark. Code Ann. § 9-27-325(h)(2) (Supp. 2021). In dependency-neglect cases, the standard of review on appeal is de novo, but we do not reverse the circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Walker v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 627, 534 S.W.3d 184. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In reviewing a dependency-neglect adjudication, we defer to the circuit court's evaluation of the credibility of the witnesses. *Id.* The focus of an adjudication hearing is on the child, not the parent; at this stage of a proceeding, the juvenile code is concerned with whether the child is dependent-neglected. *Id.* Further, only one allegation is necessary to support a dependency-neglect finding. *See Raynor v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 263, 646 S.W.3d 406.

## III. *Analysis*

Appellant generally argues that we must reverse and remand the adjudication of dependency-neglect because the circuit court failed to make the requisite findings concerning

him as the noncustodial parent, failed to order a DNA test, and failed to award him visitation with MC1.  We disagree and address each of these arguments individually.

A.  Requisite Noncustodial-Parent Findings

First, appellant argues that he was entitled to have the circuit court make all the requisite findings to which a noncustodial parent is entitled to under Arkansas Code Annotated section 9-27-327(a)(1)(B), including that he is a fit parent and that he did not contribute to the dependency-neglect.  Although he acknowledges that he failed to request these findings at the adjudication hearing, he nevertheless argues that his failure to do so does not waive his right to challenge the sufficiency of the evidence on appeal, citing our opinion in *Burks v. Arkansas Department of Human Services*, 2021 Ark. App. 309, 645 S.W.3d 527.  However, appellant's argument is without merit because appellant was not a "noncustodial parent" as defined under the code at the time of the adjudication hearing.

Arkansas Code Annotated section 9-27-327(a)(1)(B) provides the following:

(B)(i) If the court finds that the juvenile is dependent-neglected, the court shall determine whether a noncustodial *parent* contributed to the dependency-neglect and whether the noncustodial *parent* is a fit *parent* for purposes of custody or visitation.

(ii) A noncustodial *parent* in subdivision (a)(1)(B)(i) of this section is presumed to be a fit *parent*.

(iii)(*a*) If no prior court order has been entered into evidence concerning custody or visitation with the noncustodial *parent* of the juvenile subject to the dependency-neglect petition, the petitioner shall, and any party may, provide evidence to the court whether the noncustodial *parent* is unfit for purposes of custody or visitation.

(*b*) The petitioner shall provide evidence as to whether the noncustodial *parent* contributed to the dependency-neglect.

10

(iv)*(a)* The court may transfer temporary custody or permanent custody to the noncustodial *parent* after a review of evidence and a finding that it is in the best interest of the juvenile to transfer custody, or the court may order visitation with the noncustodial *parent*.

*(b)* An order of transfer of custody to the noncustodial *parent* does not relieve the Department of Human Services of the responsibility to provide services to the *parent* from whom custody was removed, unless the court enters an order to relieve the department of the responsibility.

(v) If the court determines that the child cannot safely be placed in the custody of the noncustodial *parent*, the court shall make specific findings of fact regarding the safety factors that need to be corrected by the noncustodial *parent* before placement or visitation with the juvenile.

(Emphasis added.)

A "parent" is defined as a biological mother; adoptive parent; or a man to whom the biological mother was married at the time of conception or birth, who has signed an acknowledgment of paternity, who has been found by a court to be the biological father or otherwise established paternity, or who is listed as the parent on the birth certificate of the child. Ark. Code Ann. § 9-27-303(41). Additionally, a "putative father" is defined as "any man not deemed or adjudicated under the laws of the jurisdiction of the United States to be the biological father of a juvenile who claims to be or is alleged to be the biological father of the juvenile." Ark. Code Ann. § 9-27-303(48).

Here, DHS alleged in its petition that appellant is MC1's putative father because he was not married to Ms. Tarkinton at the time of MC1's birth and had not established paternity. Ms. Tarkinton confirmed those facts in her testimony at the adjudication hearing. Therefore, the circuit court properly found that appellant was only a "putative parent for the

11

purposes of the Arkansas Juvenile Code as he has presented evidence of significant contact with the juvenile [MC1]." Given these sufficient findings that appellant was not a "parent" as defined under the Code, Arkansas Code Annotated section 9-27-327(a)(1)(B) is inapplicable, and appellant's argument that he was entitled to the noncustodial-parent findings under section 9-27-327(a)(1)(B) is without merit. As such, we affirm on this point.

## B. DNA Testing

Appellant's next argument consists of only one sentence and one statutory citation: "Additionally, since the trial court did not adjudicate Charles to be the father, the trial court failed to order DNA test results as required under the Arkansas Juvenile Code. Ark. Code Ann. § 9-27-325(n)(3)(C)." However, appellant again misreads the statute he cites.

Arkansas Code Annotated § 9-27-325(n) provides the following in relevant part:

(n)(1)(A) The department shall make diligent efforts to identify putative parents in a dependency-neglect proceeding.

. . . .

(2)(A)(i) If the petitioner has named and served a putative parent under this section and § 9-27-311, the court shall resolve the party status of a putative parent and the rights of the putative parent as a putative father.

. . . .

(B) The court shall provide a putative parent the opportunity to be heard regarding his or her efforts in establishing paternity and his or her significant contacts with regard to the juvenile involved in the dependency-neglect proceedings.

(C)(i) The court *may order deoxyribonucleic acid (DNA) testing at any time*.

(ii) A court may establish paternity or determine whether a putative parent is a parent as defined in § 9-27-303 without a deoxyribonucleic acid (DNA) test being ordered by the court or performed.

(D) If there is more than one (1) putative parent of the juvenile, the court shall order a deoxyribonucleic acid (DNA) test of each identified putative parent to determine the biological parent of the juvenile.

(E) A deoxyribonucleic acid (DNA) test establishing a putative parent as the biological parent of a juvenile is sufficient evidence on which the court may adjudicate paternity, establish that the putative parent is a parent for the purposes of this subchapter, and enter a decree of paternity.

(3) *A putative parent has the burden to prove paternity and significant contacts with the juvenile.*

(4)(A) Except as provided under § 9-27-311, a putative parent shall be named as a party if the circuit court determines that the putative parent:

(i) Has established paternity and the circuit court enters an order establishing the putative parent as the parent for the purposes of this subchapter and directs that the parent be added to the case as a party defendant; or

(ii) Has established significant contacts with the juvenile and the circuit court enters an order that putative parent rights have attached and the putative parent shall be added to the case as a party defendant.

(B)(i) If the petitioner has named and served a putative parent under this section and § 9-27-311 and the circuit court finds that the putative parent has established paternity, the court shall:

*(a)* Enter an order establishing the putative parent as a parent for the purposes of this subchapter; and

*(b)* Maintain the parent as a party defendant.

*(ii)* If the petitioner has named and served a putative parent under this section and § 9-27-311 and the circuit court finds that the putative parent has established significant contacts with the juvenile, the court shall:

*(a)* Enter an order stating that the rights of the putative parent have attached; and

*(b)* Maintain the putative parent as a party defendant.

(Emphasis added.)

Therefore, contrary to appellant's assertion, the circuit court was not "required" to order DNA testing under the circumstances presented here. Appellant was identified as the only putative father to MC1. Although the statute permits the circuit court discretion to order DNA testing in instances where there is not more than one putative parent identified, the court was not required to do so as appellant alleges, and it is appellant's burden to establish paternity. In this case, appellant did not request or produce any DNA testing at the adjudication hearing. Instead, the circuit court found that he produced evidence that he is MC1's putative father and that he had established "significant contacts" with MC1 in that MC1 had resided in his home with Ms. Tarkinton for some time. Thus, under these circumstances, we cannot find that the circuit court's failure to exercise its discretion to order DNA testing constituted reversible error under the statute cited by appellant and affirm on this point.

## C. Visitation

Finally, appellant argues that the circuit court erred in failing to award him visitation with MC1. He cites our holding in *Donham v. Arkansas Department of Human Services*, 2017 Ark. App. 698, 536 S.W.3d 675, in which we held that the circuit court did not abuse its discretion by declining to award a mother unsupervised visitation with her child or to set a visitation schedule. Again, appellant's argument lacks merit.

In *Donham*, the mother had appealed from a permanent-custody order. However, unlike here, the mother had first raised the visitation issue she argued on appeal at the permanency-planning hearing. Addressing the merits of her arguments on appeal, we explained that fixing of visitation rights is a matter that lies within the discretion of the circuit court, with the primary consideration being the best interest of the child. *Id.* After reviewing the evidence presented at the permanency-planning hearing, we held that the circuit court's visitation arrangement set forth in the permanent-custody order was not an abuse of discretion.

Appellant's citation to *Donham* is confusing and unavailing under the facts of this case. Here, appellant failed to even ask the circuit court to grant him visitation with MC1. Instead, he asked that MC1 be placed with him, which the circuit court granted on a trial basis once he could "convince" DHS that Ms. Tarkinton was no longer living in the home and resided elsewhere. He did not request at the hearing that he also be granted any visitation in the meantime or in the event MC1 could not be placed with him, despite being given the opportunity to do so. Indeed, after the circuit court announced its oral findings, appellant was permitted to specifically address the court at his request. At that time, he requested clarification on Ms. Tarkinton's visitation—not his own. As such, because appellant did not request specific findings of fact regarding his visitation, and because he cites nothing for the proposition that the circuit court was otherwise obligated to expressly make such a finding, we must affirm on this point. *See Chaffin v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 522, 471 S.W.3d 251.

Affirmed.

VIRDEN and BARRETT, JJ., agree.

*Dusti Standridge*, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.